**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO.

THE DOLGOFF PLAN CORPORATION,
a Florida For Profit Corporation,

      Plaintiff,

v.

R. KENNER FRENCH, an individual,
VAST SOLUTIONS GROUP, LLC,
a dissolved Washington Corporation,
KRISTIN LEIGH FRENCH, an individual,
and LIBERTY PARTNERS FINANCIAL
SERVICES, LLC, a South Carolina Corporation,

      Defendants.

_____/

## COMPLAINT

      Plaintiff, The Dolgoff Plan Corporation ("Plaintiff"), by and through undersigned counsel,

sues Defendant, R. Kenner French ("Mr. French"), Defendant, Vast Solutions Group, LLC

("Vast"), Defendant, Kristin Leigh French ("Ms. French"), and Defendant, Liberty Partners

Financial Services, LLC ("Liberty" and together with Mr. French, Vast, and Ms. French,

"Defendants"), and in support thereof, states the following:

## PARTIES

      1.    Plaintiff is a Florida corporation, and a citizen of the State of Florida, with its

principal place of business located at 7764 NW 70th Way, Parkland, FL 33067.

      2.    Vast is a dissolved Washington Limited Liability Company, and a citizen of the

State of Washington.

      3.    Upon information and belief, at all relevant times, Mr. French was Vast's only

member, and is a citizen of the State of Washington.

4.      Vast is liable to Plaintiff for all of Mr. French's conduct complained of herein, because at all times relevant hereto, Mr. French was an authorized agent of Vast, and such conduct was engaged in while in the scope of his authorized duties to act on behalf of Vast.

5.      Ms. French is a citizen of the State of Washington, and Mr. French's wife.

6.      Liberty is a South Carolina Limited Liability Company, and a citizen of the State of South Carolina, with its principal address located at 508 Meeting Street, West Colombia, South Carolina 29169.

7.      According to the Financial Industry Regulatory Authority, Inc.'s, website, Ms. French is a broker who is registered to sell multiple investment products under Liberty.

8.      Liberty is liable to Plaintiff for all of Ms. French's conduct complained of herein, because at all times relevant hereto, Ms. French was an authorized agent of Liberty, and such conduct was engaged in while in the scope of her authorized duties to act on behalf of Liberty.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §1332(a), because the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and because there is diversity among Plaintiff, and Defendants.

10.       This Court has supplemental jurisdiction over Plaintiff's Florida state law claims pursuant to 28 U.S.C. § 1367.

11.      Venue is proper pursuant to §28 U.S.C §1391(b)(2), as the events or omissions giving rise to the causes of action set forth herein occurred in this district, or a substantial part of property that is the subject of this action is situated in this district.

## GENERAL ALLEGATIONS

12.     Plaintiff owns the "The Dolgoff Plan," a proprietary, non-qualified plan which offers current and deferred tax deductions.

13.     The Dolgoff Plan is a unique combination of whole life insurance, and mutual funds, and can be utilized in various applications.

14.     Developed in 1962 by account Ralph Dogloff ("Ralph"), and currently owned, and implemented, by and through Plaintiff, whose principal is Ralph's son Peter Dolgoff ("Peter"), The Dolgoff Plan is sold to the public through approved professionals only.

15.     Plaintiff acts as administrator of The Dolgoff Plan.

16.     The Dolgoff Plan, and its contents, are trade secrets, because: (i) they contain formulas, patterns, compilations, programs, devices, techniques, and processes that derive economic value, actual, or potential, from not being generally known to, and not being readily obtainable by proper means by other persons who can obtain economic value from its disclosure, and use (such as Defendants), and they are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

17.     As discussed in greater detail below, Defendants obtained The Dolgoff Plan, and its contents, through improper means, misappropriated them, and disclosed them to third-parties without Plaintiff's express, or implied, consent, for their own pecuniary gain, to the detriment of Plaintiff.

18.     In or about September, 2020, Mr. French contacted Peter, whom he was introduced to *via* a colleague several years prior.

19.     Mr. French advised Peter that he thought two (2) of Mr. French's clients could benefit from The Dolgoff Plan.

20.     In email exchanges between Mr. French, and Peter, Mr. French advised Peter that one of the individual's names that he believed could benefit from The Dolgoff Plan was Neil Patel, and the other was his wife, and that he would like to present The Dolgoff Plan to them as a potential option.

21.     Unbeknownst to Plaintiff at the time, Mr. French, Ms. French, and Vast were engaged in a diabolical plot to steal Plaintiff's proprietary information and convert it for their own use, for their own pecuniary gain, causing Plaintiff to lose hundreds of thousands of dollars in revenue.

22.     Peter advised Mr. French that certain agreements needed to be executed prior to Mr. French being provided with information related to The Dolgoff Plan, in order to protect Plaintiff, and the proprietary information that is the Dolgoff Plan.

23.     On or about September 18, 2020, Plaintiff, Mr. French, and Vast entered into that certain Agreement (the "Marketing Agreement").  A copy of the Marketing Agreement is attached hereto at Exhibit "A."

24.     At the time Plaintiff, Mr. French, and Vast, entered into the Marketing Agreement, Mr. French represented to Plaintiff that: (i) Vast was a duly registered Washington Limited Liability Company; (ii) Mr. French would only use the proprietary information disclosed to him, and Vast, in furtherance of the business relationship he, Vast, and Plaintiff, entered into, and only with Plaintiff's permission; and (iii) he was authorized to conduct business as an insurance broker through Penn Mutual.

25.     As Plaintiff would come to learn at a later date, Mr. French made these representations in furtherance of his, and the other Defendants', fiendish plot to rob Plaintiff.

4

26.     The purpose of the Marketing Agreement was for French, and Vast, to actively promote, market, and sell The Dolgoff Plan, which the agreement notes is "a proprietary program wherein Dolgoff owns the copyright and all other intellectual property rights . . .."

27.     Pursuant to Paragraph 1 of the Marketing Agreement, Vast, and French, agreed to the following:

a)      Rollout a marketing program that shall include selected professionals who qualify by attending scheduled meetings/seminars/workshops (virtual or otherwise) conducted by Dolgoff or a selected representative.

b)      VSG Shall not allow anyone to promote, market or sell The Dolgoff Plan without first being trained properly under the guidelines set forth by Dolgoff.

c)      abide by the Commission and Compensation schedule herein (paragraph 3) to this Agreement as stated within.

d)      Oversee that those qualified agents/advisors who have the necessary dual licenses (Series 6 or 7 minimum Life Insurance) and that said agents/advisors must be approved by Dolgoff and at its' sole discretion and may deny anyone the right to make any presentations of The Dolgoff Plan. A Confidentiality and Marketing Agreement must be signed and submitted to Dolgoff by each approved producer.

e)      Be given revamped Power Point presentations reflecting the association between VSG and Dolgoff as well as marketing material with the final approval of changes and updates by Dolgoff.

f)      VSG Shall have the ability to create a basic Power Point presentation and that Dolgoff shall have final approval of any Power Point or other material and that no material or Power Point may be used or presented without final approval by Dolgoff.

28.     Pursuant to Paragraph 2 of the Marketing Agreement, Plaintiff granted French, and Vast[1], the "ability to use and market The Dolgoff Plan . . . only upon written approval from [Plaintiff] . . .."

---

[1] Due to a scrivener's error contained in the Marketing Agreement, the named "Fortis" is used in multiple places, instead of the intended names, Mr. French, and Vast. This scrivener's error was acknowledged by Mr. French in email communications with Peter, and the terms, and conditions,

29.     Also pursuant to Paragraph 2 of the Marketing Agreement, it was Mr. French's, and Vast's, responsibility to "inform all producers, advisers, agents, employees, etc., who have had access to or had used the material, that they no longer have the ability to market and promote the plan nor use any of the material provided or available to them and must delete that material within five (5) business days from notification."

30.     Pursuant to Paragraph 3(a) of the Marketing Agreement, Mr. French, and Vast, were required to list Plaintiff, or Dolgoff, "on all insurance applications pertaining to any sale of The Dolgoff Plan as an agent of record for an amount of 25 (twenty-five) percent of all commissionable premiums regardless of the type of policy(ies) used within any plan implemented."

31.     Pursuant to Paragraph 3(c) of the Marketing Agreement, Mr. French, and Vast, were required to "maintain in good order all pertinent papers and filed, regardless of format, related to all Dolgoff Plans sole/placed and available to or provided to Plaintiff upon request for administration purposes.  [Plaintiff] shall also have access to all policies sold regardless of the type of insurance policy implemented in any Dolgoff Plan."

32.     Pursuant to Paragraph 5 of the Marketing Agreement, it was "agreed that [Vast and French] and [their] approved producers, advisors, managers and sales people shall present The Dolgoff Plan under the rules and guidelines set forth by or communicated by [Plaintiff] and that all Dolgoff Plans shall be administered by [Plaintiff] solely and that no other person, corporation, or entity shall be permitted to do so without the express written consent of [Plaintiff]."

33.     Pursuant to Paragraph 6 of the Marketing Agreement, it was "agreed that [Plaintiff] and only [Plaintiff] shall create all presentations of Dolgoff Plans including but not limited to all

---

contained in the Marketing Agreement are binding on Mr. French, and Vast, as evidenced by the preamble to the Marketing Agreement, and the signatures contained therein.

life illustrations.  No [Vast] entity nor [Vast] personnel or advisor shall have the right to create, present, or market any presentation not created by [Plaintiff] unless written authorization is given by [Plaintiff]."

34.     Pursuant to Paragraph 9 of the Marketing Agreement, Mr. French, and Vast, agreed to "maintain, in strict confidence, the Confidential and Proprietary Information disclosed to [Vast and Mr. French by [Plaintiff].  Such Confidential and Proprietary Information shall include, but is not limited to confidential information, knowledge, data, knowhow, formulae, computer programs, marketing plans, ideas, improvements, and innovations related to The Dolgoff Plan.

35.     Pursuant to Paragraph 15 of the Marketing Agreement, the Agreement is "governed and construed in accordance with the laws of the State of Florida."

36.     On September 28, 2020, Mr. French, and Vast, entered into that certain Commission Agreement (the "Commission Agreement"), pursuant to which it was "agree[d] that Dolgoff/The Dolgoff Plan Corporation shall be on all insurance applications for twenty-five percent (25%) pertaining to any Dolgoff Plan sales." A copy of the Commission Agreement is attached hereto at Exhibit "B."

37.     Pursuant to the Commission Agreement, it was also "agreed that The Dolgoff Plan Corporation shall create all plan presentations requested, including all insurance illustrations, for any agents/producers affiliated with the Vast Solutions Group and that this agreement shall cover all agents' producers affiliated with said firm . . . [and that c]ompleted copies of all signed and submitted insurance applications shall be sent via email to The Dolgoff Plan Corporation for administration purposes only – no exceptions."

38.     On or about October 1, 2020, Mr. French, and Vast, entered into that certain Marketing and Confidentiality Agreement (the "Confidentiality Agreement"), pursuant to which French agreed, among other things:

- that upon being shown, explained or given the material and information pertaining to a proprietary program known as The Dolgoff Plan that he shall not use, hand out, or provide or discuss any of the material and/or information for any presentation, distribution, promotion or sale of the Dolgoff Plan to anyone, including any association, without being in the presence of a qualified representation of the Dolgoff Plan or receiving written permission to do so

- to hold in strict confidence any and all confidential information disclosed to him and that all confidential information shall be used for evaluation and compliance only

- that the program shown to him may not be compromised of information which, themselves separately, would not be considered proprietary or exclusively known by the person disclosing this information, but rather it is the usefulness and value of the application timing, sequencing, and/or a combination of the various components of the separate financial vehicles put together using tax codes and methods which are attributable to the proprietary nature of the program.

- he was presently licensed, or will become licensed, for whole life Insurance sales with Penn Mutual and that all other insurance policy application pertaining to any Dolgoff Plan will be submitted through the General Agency chosen by the Dolgoff Plan Corporation.

A copy of the Confidentiality Agreement is attached hereto at Exhibit "C."

39.    On September 28, 2020, Mr. French provided Peter with information pertaining to certain clients that he wanted to present The Dolgoff Plan to.

40.    These potential clients included Dubin Law Group ("Dubin Law"), Matthew Dubin ("Dubin"), Neil Patel Digital ("Patel Digital"), Neil Patel ("Patel"), Front Street Clinic ("Front

Street"), Young Oak Pryor ("Ms. Pryor"), Antone Pryor ("Mr. Pryor"), Conceptual, LLC ("Conceptual"), Chris Sommer ("Sommer"), Malcom Murfin ("Murfin"), TRC Realty ("TRC"), and Jade Buckman ("Buckman" and together with Dubin Law, Dubin, Patel Digital, Patel, Front Street, Ms. Pryor, Conceptual, Sommer, Murfin, TRC, and Buckman, the "Dolgoff Clients")

41.    Mr. French is listed as the "Producer," and Ms. French is listed as the "Securities Producer," on the aforementioned documents provided to Peter by Mr. French.

42.    As Mr. French's wife, and the "Securities Producer," Ms. French was aware of Plaintiff's business relationship with Mr. French, and Vast, the existence of the aforementioned agreements, and the proprietary nature of The Dolgoff Plan, and its contents.

43.    Defendants sold, or were involved in the sale, and provision of, insurance products, and marketing materials to the Dolgoff Clients that utilized The Dolgoff Plan, and/or its contents, without Plaintiff's consent, stealing Plaintiff's trade secrets.

44.    On or about December 29, 2020, Mr. French sent Peter an email advising Peter not to contact any of Mr. French's clients going forward, because Peter had contacted Mr. Pryor, Ms. Pryor's wife, *via* email, to advise him that he would be receiving an email from Penn Mutual regarding his insurance policy, which utilized The Dolgoff Plan.

45.    Also on December 29, 2020, Mr. French emailed Peter providing him with the social security numbers for both Mr., and Ms., Pryor, in connection with the implementation of The Dolgoff Plan into an insurance policy Mr. French was going to sell to them, and Front Street.

46.    On January 7, 2021, concerned with the lack of communication, and obfuscation, Peter sent Mr. French a letter in which he proposed that they "continue to solicit The Dolgoff Plan, in accordance with the agreements you signed (the Marketing/Confidentiality, and Commission Agreement), to those clients to whom you have already discussed and presented The Dolgoff Plan, namely:

9

(1) Dr. Antone Pryor; (2) Dr. Young Oak Pryor; (3) Chris Sommer;
(4) Malcolm Murfin; (5) Neil Patel; (6) Jade Buckman; and (7) Mathew Dubin.

47.     On December 28, 2020, Peter emailed Deb Woodruff ("Woodruff"), upon

information and belief, an employee of Vast, and/or Mr. French, asking for confirmation that Mr.

French had been appointed with Penn Mutual, and for his agent code.

48.     Woodruff responded that Mr. French's appointment would likely not be completed

in time, and that Ms. French would be the agent that submitted the business that contained The

Dolgoff Plan.

49.     On February 1, 2021, Peter received an email from Woodruff purporting to

terminate the Marketing Agreement on five (5) days' notice.

50.     Woodruff's attempted termination of the Marketing was of no legal effect.

51.     Assuming, *arguendo*, Woodruff's attempted termination of the Marketing

Agreement was effective, it still did not pertain to the Commission Agreement, nor the

Confidentiality Agreement, and it still did not release Mr. French, nor Vast, of their obligations

thereunder, including the obligation to compensate Plaintiff.

52.     On or about February 4, 2021, Plaintiff received copies of three (3) brokerage

statements from Liberty.

53.     The three (3) statements were for accounts opened in January, 2021.

54.     Two (2) of the statements were for Front Street and one was for

Conceptual.

55.     The aforementioned statements are for accounts being held by Liberty, and list Ms.

French as "**Your Financial Professional**."

56.     Peter continued to receive these monthly statements.

57.     On February 22, 2021, in response to an email from Peter requesting an update, Woodruff responded that "[n]o applications have completed and filed for any of the [Dolgoff Clients] …. notwithstanding the termination, if in the future, a commission sale occurs [Vast] will honor the appropriate commission payable to Mr. Peter Dolgoff."

58.     This turned out to be a lie.

59.     On or about June 8, 2021, Plaintiff received the aforementioned three (3) statements as he had been doing for the past several months.

60.     The Front Street statement shows One Hundred Twenty-Five Thousand Dollars ($125,000.00) was removed from the Front Street account statement.

61.     On July 15, 2021, after receiving statements for June, 2021, Plaintiff decided to send out Administration Invoices to both Front Street, and Conceptual, to see if they would remit payment to Plaintiff for the use of The Dolgoff Plan in the products sold to them by Defendants.

62.     On July 26, 2021, Mr. Pryor contacted Peter and advised that he wanted to pay the administration fee for Ms. Pryor, his wife, as she was the only one who obtained an insurance policy, which was approved in May, 2021, and paid for in June, 2021.

63.     After speaking with Mr. Pryor, it became evident to Peter that Defendants had stolen The Dolgoff Plan, and its contents, and utilized it in an insurance policy sold to Ms. Pryor.

64.     This was confirmed when Peter contacted Penn Mutual, which advised Peter that Ms. Pryor had a policy on which Ms. French was listed as the agent of record.

65.     All conditions precedent to the bringing of this action have been satisfied, discharged or waived.

## COUNT I

### (Misappropriation of Trade Secrets Under Florida's Uniform Trade Secrets Act, Florida Statutes Section 688.001, *et seq.* – against Defendants)

66.     Plaintiff adopts and incorporates by reference paragraphs 1 – 65 as if fully set forth herein.

67.     Mr. French, Ms. French, Vast, and Liberty, had, and have, certain of Plaintiff's confidential information including, but not limited to, business formulas, patterns, programs, models, presentations and techniques (collectively the "Trade Secrets").

68.     Each item identified in the Trade Secrets constitutes a "trade secret" within the definition provided by Florida Statutes Section 688.002(4).

69.     Plaintiff has taken reasonable efforts to maintain the secrecy of its Trade Secrets.

70.     Plaintiff derives economic benefit from its Trade Secrets by ensuring that they are not generally known and are not readily ascertainable by persons outside of Plaintiff.

71.     Defendants obtained the Trade Secrets under circumstances giving rise to a duty to maintain their secrecy and to limit their use only for Plaintiff's benefit.

72.     The Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

73.     Defendants have misappropriated the Trade Secrets by both acquiring them by improper means, and disclosing them without Plaintiff's consent.

74.     Since Defendants still maintain possession of the Trade Secrets, and will continue to disclose, and use, or inevitably disclose and use, the Trade Secrets in the future, Plaintiff has no adequate remedy at law for the damage caused to it by Defendants.

75.     Defendants' conduct has caused Plaintiff harm including, among other things, loss of goodwill, loss of revenue and profits, and loss of investment in development of the Trade Secrets.

76.     In addition, Defendants' acts continue to irreparably harm Plaintiff because disclosure and use of the Trade Secrets can damage Plaintiff's business, customer relationships, and goodwill, and cause further and ongoing losses.

WHEREFORE, Plaintiff demands that Defendants (i) be temporarily and permanently enjoined from using the Trade Secrets or revealing them to others and Defendants  be enjoined from obtaining employment, continuing employment, entering into business relationships, or continuing business relationships where such disclosure or use of the Trade Secrets is inevitable; (ii) be ordered to account for all benefits and monies realized as a result of their wrongful conduct and, upon the rendering of such accounting, that judgment be rendered against Defendants for the amount shown due and for the cost of accounting; (iii) a constructive trust be imposed on all proceeds, assets, and benefits accruing to Defendants as a result of their wrongful conduct; (iv) have a monetary judgment entered against Defendants, in an amount to be determined, including, but not limited to attorneys' fees, and costs, and punitive damages; and (v) have such other and further relief as the Court deems just, equitable, and proper entered against her. \

## COUNT II

### (Breach of Contract – Marketing Agreement – Against Mr. French and Vast)

77.     Plaintiff adopts and incorporates by reference paragraphs 1 – 65 as if fully set forth herein.

78.     The Marketing Agreement is a valid, binding contract.

79.     Mr. French, and Vast, materially breached the Marketing Agreement by, among

13

other things: (i) failing to list Plaintiff on all insurance applications pertaining to any sale of The Dolgoff Plan as an agent of record for an amount of 25 (twenty-five) percent of all commissionable premiums regardless of the type of policy(ies) used within any plan implemented; (ii) failing to maintain in good order all pertinent papers and files, regardless of format, related to all Dolgoff Plans available to or provided to Plaintiff upon request for administration purposes; (iii) administering The Dolgoff Plain without the express written consent of Plaintiff; (iv) creating, presenting, and marketing presentations of Dolgoff Plans without Plaintiff's written authorization; and (v) disclosing confidential information related to The Dolgoff Plan.

80.     Mr. French's, and Vast's, breaches of the Marketing Agreement have caused Plaintiff to suffer damages.

WHEREFORE, Plaintiff demands judgment against Mr. French, and Vast, for damages, in an amount to be determined, including, together with such other, further, and different relief as the Court deems just and proper.

## <u>COUNT III</u>

### <u>(Breach of Contract – Commission Agreement – Against Mr. French and Vast)</u>

81.     Plaintiff adopts and incorporates by reference paragraphs 1 – 65 as if fully set forth herein.

82.     The Commission Agreement is a valid, binding contract.

83.     Mr. French, and Vast, materially breached the Commission Agreement by, among other things, failing to include Plaintiff on all insurance applications for twenty-five percent (25%) pertaining to any Dolgoff Plan sales.

84.     Mr. French's, and Vast's, breaches of the Commission Agreement have caused Plaintiff to suffer damages.

WHEREFORE, Plaintiff demands judgment against Mr. French, and Vast, for damages, in

an amount to be determined, including, together with such other, further, and different relief as the Court deems just and proper.

## COUNT IV

### (Breach of Contract – Confidentiality Agreement – Against Mr. French and Vast)

85.     Plaintiff adopts and incorporates by reference paragraphs 1 – 65 as if fully set forth herein.

86.     Mr. French, and Vast, materially breached the Confidentiality Agreement by, among other things: (i) using, handing out, providing, and discussing confidential information for any presentation, distribution, promotion or sale of The Dolgoff Plan; (ii) failing to hold in strict confidence any and all confidential information disclosed to them; and (iii) not being licensed, or becoming licensed, for whole life Insurance sales with Penn Mutual.

87.     Mr. French's, and Vast's, breaches of the Confidentiality Agreement have caused Plaintiff to suffer damages.

WHEREFORE, Plaintiff demands judgment against Mr. French, and Vast, for damages, in an amount to be determined, including, together with such other, further, and different relief as the Court deems just and proper.

## COUNT V

### (Fraudulent Inducement – Against French and Vast)

88.     Plaintiff adopts and incorporates by reference paragraphs 1 – 65 as if fully set forth herein.

89.     Mr. French made multiple misrepresentations, and omissions, of material fact in order to induce Plaintiff to enter into the Marketing Agreement, the Commission Agreement, and the Confidentiality Agreement, and to disclose the Trade Secrets.

90.     As its authorized agent, Mr. French's fraudulent conduct is imputed to Vast.

91.     Among other things, Mr. French represented to Plaintiff that he was appointed by Penn Mutual, that he would keep the Trade Secrets confidential, and that he would remit the commission payments related to use, or implementation of, The Dolgoff Plan.

92.     At the time Mr. French made the aforementioned misrepresentations, and omissions, of material fact, he knew that they were false, and he intended that Plaintiff would rely on them.

93.     Plaintiff relied on Mr. French's misrepresentations, and omissions, of material fact.

94.     As a result of Mr. French's misrepresentations, and omissions, of material fact, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against Mr. French, and Vast, for damages, in an amount to be determined, including, but not limited to, punitive damages, together with such other, further, and different relief as the Court deems just and proper.

## COUNT VI

### (Accounting – Against All Defendants)

95.     Plaintiff adopts and incorporates by reference paragraphs 1 – 65 as if fully set forth herein.

96.     Plaintiff is entitled to an accounting from Defendants, because of the existence of a complex transaction, and because a remedy at law would be inadequate.

97.     Indeed, without such an accounting, it is impossible for Plaintiff to determine the breadth, and scope, of the damages caused to it by Defendants, as such can only be calculated upon a review of Defendants' books, and records, relevant to their use of The Dolgoff Plan.

WHEREFORE, Plaintiff demands an accounting of Defendants' relevant books, and records, which would establish the amount of revenue generated by Defendants' illicit use of

Plaintiff's Trade Secrets, together with such other, further, and difference relief, as the Court deems just and proper.

## COUNT VII

### (Civil Conspiracy – Against Mr. French, Vast, and Ms. French)

98.     Plaintiff adopts and incorporates by reference paragraphs 1 – 65 as if fully set forth herein.

99.     Mr. French, Vast, and Ms. French conspired to do an unlawful act, or to do a lawful act by unlawful means, did multiple overt acts in pursuance of the conspiracy, and Plaintiff suffered damages as a result of the acts performed pursuant to the conspiracy.

100.     *To wit*, Mr. French, Vast, and Ms. French conspired to steal the Trade Secrets by defrauding Plaintiff into revealing same to them, and incorporated the Trade Secrets into insurance policies sold by, or with the assistance of, Defendants, depriving Plaintiff of the proceeds resulting from same.

WHEREFORE, Plaintiff demands judgment against Mr. French, Vast, and Ms. French, for damages, in an amount to be determined, including, but not limited to, punitive damages, together with such other and further relief as the Court deems just and proper

DATED: October 5, 2021.                    LUBLINER LAW PLLC

                                    By:     */s/ Richard S. Lubliner*
                                            Richard S. Lubliner, Esq.
                                            FBN 0047741
                                            1645 Palm Beach Lakes Blvd., Suite 1200
                                            West Palm Beach, Florida 33401
                                            Phone: 561-207-2018
                                            Fax: 561-584-7227
                                            Email: rich@lubliner-law.com
                                            Email: carolina@lubliner-law.com